UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jason Compton,                :  Case No. 1:10-cv-302
                            :
    Plaintiff,          :
                            :
vs.                        :
                            :
Marty Donini, individually and  :
in his official capacity as    :
Sheriff of Scioto County, et al,  :
                            :
    Defendants.        :

**ORDER**

Before the Court is the motion for summary judgment filed by Defendants Marty Donini, the Sheriff of Scioto County, and Scioto County, Ohio. (Doc. 21)  The moving Defendants seek judgment on Plaintiff's complaint, which generally alleges that Defendants deprived him of needed medical care while he was incarcerated at the Scioto County Jail from September 2009 through January 2010. For the following reasons, the Court will grant Defendants' motion.

**FACTUAL BACKGROUND**

Jason Compton alleges in his complaint that from on or about September 1, 2009 through January 21, 2010, he was subjected to unlawful jail conditions in violation of his rights under the 8th and 14th amendments. More specifically, he alleges that on September 3, 2009, he began passing blood, advised some unnamed

corrections officers of his condition, and asked for medical
care.  The "defendants" allegedly refused his request and
instead, corrections officers mocked him and made jokes about
him.  Compton persisted in his complaints over the next two days,
advising the officers that he was in severe pain.  He alleges
that the "defendants" finally sent a nurse to speak with him.
(Doc. 1, ¶12(A) - (C))[1]

        Compton alleges that the nurse told him that if he could not
urinate or have a bowel movement, that she could not help him.
She also refused his request for transfer to the local hospital's
emergency room.  Compton and his family "repeatedly, almost
hourly, badgered defendants, advising defendants that plaintiff
had been hospitalized approximately two months prior and that he
had had blood transfusions, that he was short of breath and in
severe pain, and insisting that defendants provide proper medical
care and treatment...".  (Doc. 1, ¶¶12(D)-(E))  The complaint
alleges that instead of obtaining help for Compton, unidentified
jail officers told him he was "dope sick," and that the jail
nurse told the officers to give him Ibuprofen.  When Compton
contacted his family, the "defendants" terminated his telephone
call; when he continued to complain of extreme pain, a

---

        [1] The complaint includes allegations against unidentified
"Doe" defendants, individuals who allegedly participated in these
events.  None of these defendants have been identified by Compton
or served with his complaint.

corrections officer told him to "shut up" because the officer was watching television.

On September 6, Compton's cellmate allegedly told the officers that Compton was cold, pale and sweating, at which point an officer obtained a wheelchair and took Compton to booking. Another officer then took him to the local emergency room, but refused to remove Compton's handcuffs, made him walk into the hospital, and threatened him.  Compton alleges that upon arrival at the hospital, he needed immediate surgery for a perforated ulcer, and that someone told him if he had waited another half-hour he likely would have died.  Compton remained hospitalized for 31 days, and he alleges that the "defendants" caused Compton to sign a form authorizing a conditional release from the jail when he was still medicated from his surgery.  He alleges that this was done to force Compton to pay for his medical care instead of the county.  And he alleges that the form permitted Compton to return to the jail when he was released from the hospital on an agreed date of October 19, 2009.  Despite this, Compton was re-arrested by an unknown police officer prior to October 19 and returned to the jail.  Another officer quickly agreed to release him, but he was later reincarcerated.

After he was returned to the jail, Compton alleges that the defendants refused to change his surgical bandages and to assist him with his medical needs.  He developed an infection as a

result, which led to "defendants" allowing him to be released in order to have his bandages changed. He also alleges that he was not given his prescribed medication. Compton complained about all of these events to no avail. He further alleges that the defendants regularly fail to meet the medical needs of incarcerated individuals.

The only defendants who have been served, have entered appearances and are properly before the Court are Marty Donini, individually and in his official capacity as Sheriff of Scioto County, and Scioto County. The Defendants seek summary judgment, because Compton's complaint does not allege facts upon which Sheriff Donini could be liable to Compton individually. And they argue there is insufficient evidence to raise a genuine factual dispute about any potential County liability.

**ANALYSIS**

Summary Judgment Standards

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An assertion of a undisputed fact must be supported by citations to particular parts of the record, including depositions, affidavits, admissions, and interrogatory answers. The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his

-4-

pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (internal quotation omitted). The Court is not duty bound to search the entire record in an effort to establish a lack of material facts. Guarino v. Brookfield Township Trs., 980 F.2d 399, 404 (6th Cir. 1992). Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment...," Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. Anderson, 477 U.S. at 250. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. United States v. Diebold Inc., 369 U.S. 654, 655 (1962).

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at

250.  "If the evidence is merely colorable, . . . , or is not significantly probative, . . . , the court may grant judgment." Anderson, 477 U.S. at 249-50 (citations omitted).  Moreover, "... when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

Federal Constitutional Claims

It is beyond dispute that pretrial detainees have a right to adequate medical care and treatment that is protected by the 14th Amendment, a right analogous to a prisoner's right under the 8th Amendment.  "A cause of action under Section 1983 for failure to provide adequate medical treatment requires a showing that the defendants acted with deliberate indifference to the serious medical needs of the pretrial detainee. ... Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to [Compton's] health and safety."  Spears v. Ruth, 589 F.3d 249, 254 (6th Cir. 2009) (internal citations omitted).

A deliberate indifference claim has both an objective and a subjective component.  The objective prong requires evidence showing that Compton had a "sufficiently serious" medical need. Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001).  The

-6-

subjective prong requires Compton to demonstrate that the county official(s) had a sufficiently culpable state of mind in denying him medical care; that is, that they were aware of "facts from which the inference could be drawn that a substantial risk of serious harm existed," and that those officials actually drew that inference.  Farmer v. Brennan, 511 U.S. 825, 837 (1994). Compton may rely on circumstantial evidence, and "a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  Id.  But because culpability is personal, the subjective prong must be addressed for each officer or jail official individually.  Garretson v. City of Madison Heights, 407 F.3d 789, 797 (6th Cir. 2005).

Compton's claims are based almost entirely on the allegations of his complaint, which he has repeated and amplified somewhat in his affidavit filed in opposition to Defendants' motion.  (See Doc. 19, Exhibit A)  Based upon the records submitted by the Defendants, there is no dispute that in the early morning hours of September 6, 2009, Compton was taken from the Scioto County jail to the Southern Ohio Medical Center's emergency room, where he was eventually diagnosed with a duodenal ulcer perforation and underwent emergency surgery to repair that perforation.  But evidence satisfying the objective prong of the deliberate indifference standard cannot be premised on hindsight, by simply arguing that the "defendants must have known."  Rather,

the evidence must show that there was a substantial risk presented at the time of the defendants' alleged indifference to Compton's needs.

Compton claims that from September 1, when he entered the jail, until September 6 when he went to the hospital, jail officials ignored his complaints of excruciating pain and passing blood. Defendants have submitted verified copies of Compton's records of medical care from the county jail, and his records from the Southern Ohio Medical Center covering his September 2009 hospitalization. (Doc. 22, Exhibits 1 and 2) Compton's allegations in this lawsuit are directly contradicted by his own statements to the jail nurse and to the hospital staff that are contained in those records. The jail's medical screening form completed when Compton was initially brought to the jail after his arrest on September 1 states that Compton informed the officer about his previous back surgery, but denied that he was taking any medication other than "street drugs" (identified as "OXYs" on the form) on a daily basis. The Court presumes that "OXYs" refers to oxycontin.

Trisha Burke is a nurse who worked at the Scioto County jail and assisted in Compton's medical treatment while he was incarcerated. As set forth in her affidavit (Doc. 22, Exhibit A), Compton completed a health service request form on September 3, 2009 at approximately 4 p.m. He reported that he had pain in

-8-

his lower back, and some swelling in his legs.  Ms. Burke states
that this is the first request form the medical staff received
from Compton.  Compton was seen the next day, September 4, at 9
a.m. by Nurse Johnson.  Her nursing notes from that visit state
that Compton told Johnson that he had back surgery in January
2009, and that he had been taking pain medication.  Compton
reported that he had not had any medication since Tuesday
(presumably September 1, the day he was arrested).  Johnson noted
her observations that Compton was calm, and that he had no
obvious signs or symptoms of distress.  His blood pressure,
respiration and heart rate were all stable and normal.  Johnson
had Compton sign release forms so that his medical records could
be obtained, and she ordered that he would be monitored for any
changes in his condition.  The jail physician reviewed Compton's
chart on September 4 at 1445 hours (2:45 p.m. in the afternoon)
and ordered a prescription strength of Motrin, an anti-
inflammatory and pain reliever, be given to Compton twice a day.

    The next day, Saturday September 5, Compton was seen at 1650
hours (4:50 p.m.) by Nurse Burke at the request of the jail's
shift supervisor.  Compton complained of "pain when urinating and
stomach cramps."  He did not say anything to Burke about passing
blood.  Nurse Burke recorded that Compton exhibited no signs or
symptoms of distress, that he was alert and oriented, walking and
talking.  Compton reported his pain scale to be 10, and upon

examination Burke found that he had slight right side tenderness in his abdomen but without swelling.  Nurse Burke informed the doctor, who prescribed Cipro (an antibiotic) and increased Compton's dosage of Motrin.  Nurse Burke states in her affidavit that Compton did not ask her to send him to the emergency room, and that he was in generally good condition.

On Sunday, September 6 at 2 a.m., nine hours after Compton saw Nurse Burke, he was taken to the Southern Ohio Medical Center on the order of Dr. Blair.  The emergency room admitting record states that Compton presented "with Pain Abdomen for 1 Day.  The Onset is Gradual.  The symptoms are Severe, pain, Constant."  Compton denied any vomiting, and stated that he had been able to move his bowels.  (Doc. 21, Exhibit B at p. 15) The physician noted "no symptoms or objective findings that are life or limb threatening.  Medically Screened and stable for transfer from the emergency department."  <u>Id</u>.  Compton then had a radiology scan which detected the perforated ulcer, and he was sent to surgery at approximately 6 a.m.

The facts in the medical records that Compton himself provided to the jail medical staff and to the emergency room staff directly contradict his claims that he repeatedly complained of excruciating pain and passing blood over several days before his hospitalization.  There is no simply evidence from these records that supports Compton's accusation that he was

-10-

"near death" by the time jail officials transported him to the hospital.  But the critical question is whether the evidence satisfies the objective prong of the indifference standard: did Compton have a sufficiently serious medical need at any time before he was transported to the hospital in the early morning of September 6.  His own statements to the jail nurses on September 4 and September 5 do not support that assertion.  The Sixth Circuit has noted that if an indifference claim "... arises from an injury or illness so obvious that even a layperson would easily recognize the necessity for a doctor's attention ... it is sufficient to show that [the plaintiff] actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame."  Blackmore v. Kalamazoo County, 390 F.3d 890, 899-900 (6th Cir. 2004).  There, the plaintiff had complained to jailers of sharp stomach pain over two days and had vomited.  Jail officers gave him some antacids but did not obtain any medical care for him, and it was undisputed that a sergeant's log kept by the jail documented his "sharp abdominal pain" over those days.  After two complete days, a jail nurse finally examined him and diagnosed appendicitis.  The Sixth Circuit noted that the jailers were sufficiently concerned about plaintiff that they put him in an observation cell before they finally called for a nurse, supporting the conclusion that they recognized his obvious need for assistance.  And in Bertl v. City of Westland,

2009 U.S. App. LEXIS 2086 (Feb. 2, 2009), the detainee was
arrested for drunk driving, and his blood alcohol level was 0.26
at his arrest.  Three days later he appeared in court for
sentencing, and the court noted that he was suffering from
withdrawal symptoms, deliriums tremens.  He was later transported
to another jail, and the officers had to carry him into the cell
and lay him on the floor.  The officers then summoned medical
help, but the nurse who responded refused to examine him until he
had been searched, and she returned to her office.  Other
prisoners described him as unconscious and unresponsive when the
nurse refused to enter the cell.  The court found that the nurse
was not entitled to immunity, as he was exhibiting classic signs
of delirium tremens, a substantial medical need that even lay
people could recognize.

Here, in contrast, Compton was seen by the jail nurse on two
successive days.  He complained of various symptoms that were not
obviously life threatening, and he promptly received treatment
from the jail physician for the symptoms he reported.  Compton
has not presented any medical evidence that his condition, as he
himself reported it to Nurse Burke in the afternoon of September
5, presented an objective substantial medical need to which any
jail official failed to adequately respond.

Compton has not identified or pursued claims against any of
the corrections officers whom he alleges ignored him either prior

to September 3, or during the nine hours that elapsed between the time he saw Nurse Burke on September 5 and his admission to the hospital early on September 6.  His general allegations regarding "defendants" or "corrections officers" are insufficient to raise a genuine factual dispute.  See, e.g., <u>Jones v. Muskegon County</u>, 625 F.3d 935, 942-943 (6th Cir. 2010), affirming summary judgment in favor of 21 individually named corrections officers on plaintiff's claim of deliberate indifference.  The officers had all worked at the jail during the time of plaintiff's incarceration, and he alleged that all of them ignored his requests for assistance.  The Sixth Circuit affirmed the district court's conclusion that affidavits provided by other inmates about "officers" in general, or several officers who had been seen talking to each other, were insufficient to raise a genuine issue regarding the liability of any individual officer.

Compton was reincarcerated after his discharge from the hospital on September 30, and he also contends that the Defendants were indifferent to his medical needs after that date. He asserts that his September 6 conditional release form permitted him to return to the jail on October 19, 2009, but that he was arrested before that date.  The records from the jail, submitted with the affidavit of Marty Donini, include a copy of a grand jury indictment returned against Compton and an arrest warrant issued on September 30.  He was arrested on that warrant

-13-

on October 4 and returned to the county jail, but he was released
again a few hours later on the order of Captain Sparks. (Doc.
15, Donini Affidavit, Exhibit 2 at p. 28) These events do not
relate to his claim of inadequate medical care. Compton was
again reincarcerated on October 9 at 12:27 p.m., and he reported
at that time that he was taking "Cumodine" (presumably Coumadin
which he had been given upon discharge from the hospital on
September 30), and "IBU." He also told the booking officer that
his stomach was healing from his surgery. (Id. at pp. 34-35)
The next day, October 10, he was given a conditional release to
go to the hospital for treatment and then return directly to the
jail. (Id. at p. 37) This pattern continued over the next
several weeks, as the record includes conditional release forms
permitting Compton to go to the hospital for treatment or for
doctor's appointments that are dated October 11, October 12,
October 13, October 14, October 15, October 17, October 18,
October 20, October 21, October 22, October 24, October 25,
October 27, October 28, and October 29. Thereafter, he
apparently remained in the jail until January 2010; he was
sentenced on February 5 to a term in state prison. (Id. at p.
167)

The jail medical records during this period support
Defendants' argument that Compton received care when he requested
it. He was seen by Nurse Burke on October 14 for a dressing

-14-

change "per discharge orders from SOMC." At that time, Compton denied any other complaints. (Burke Affidavit, Exhibit 1 at p. 172) As explained in Burke's affidavit and confirmed in the medical records, Compton asked the staff on several occasions to examine his surgical wound and to apply new dressings, which was done. He occasionally asked for medication for back pain, and he was prescribed Tramodol (a pain reliever) on November 5. Compton was examined by jail physician Dr. Johnson on November 9, who examined his wound and found it to be healing well. On December 1, Compton complained about swelling in his legs, and asked for refills on his medications. Nurse Burchett examined him on December 3 and noted edema in his legs, but his vital signs were normal. The jail physician ordered Tylenol, and placed Compton on once per week weight checks which are documented in the records. In addition, Compton received medications prescribed after his discharge from the hospital, including warfarin (Coumadin), Cipro, Bactrim, and Flagyl. (Id. at pp. 0176-0177) The medical records submitted by Defendants flatly contradict Compton's claims that the county jail staff ignored any substantial medical need that he had after he was discharged from the hospital and reincarcerated.

Even if there was some reasonable inference on this record that a substantial need was ignored, Compton has not satisfied the subjective prong of the indifference standard, requiring

evidence that any county or jail official knew of facts from
which he or she could have inferred that Compton faced a
substantial risk of serious harm, and chose to disregard that
risk.  Compton reported his pain level as "10" when he saw Nurse
Burke during the afternoon of September 5, but other than his own
assessment of pain his condition was unremarkable.  He was calm
and oriented, and he was able to walk and to talk with Nurse
Burke.  She noted some abdominal tenderness, but Compton provides
nothing to suggest that anyone associated with the jail suspected
that he had a perforated ulcer (or some other serious condition)
based on Nurse Burke's observations and Compton's own reports of
his symptoms.  Moreover, Compton's chart was reviewed by the
physician the same day, and he prescribed Cipro and increased
Compton's pain medication.  Compton has no evidence raising a
reasonable inference that this decision amounts to deliberate
indifference to a substantial risk of harm that Compton faced at
that time.

The affidavit of Ray Vestel, Compton's father-in-law, does
not alter this conclusion.  Vestel avers that a few days after
Compton was first incarcerated, Compton began calling Vestel and
Compton's wife to complain of pain, bleeding and shortness of
breath.  But as noted above, Compton did not report any bleeding
or shortness of breath to the prison nurse on either September 3
or September 4.  Vestel states that Compton complained that he

was not receiving Coumadin, but there is no evidence that Compton had been prescribed Coumadin prior to his hospitalization later that month. Vestel also claims that he made phone calls to the jail but that they were unsuccessful and that he was treated rudely. But he does not identify anyone with whom he actually spoke during any of those phone calls, nor state when these calls were actually made.

Vestel also asserts that he personally went to see Sheriff Donini and explained Compton's medical condition, and complained about the failure of the jail to take him to the hospital and to give him medications. According to Vestel, Sheriff Donini indicated that "he would take care of it." (Doc. 19, Vestel Affidavit at §7) After this conversation, Vestel claims that nothing was done, and that Compton received no treatment. Vestel's assertion that "nothing was done" and that Compton "received no treatment" is flatly contradicted by the medical evidence before the Court that is discussed above. Vestel does not identify when his alleged conversation with Sheriff Donini occurred, and the sketchy description he provides is insufficient to raise an inference that Sheriff Donini ignored Compton's substantial medical needs at any time. Individual liability in a Section 1983 action cannot be premised simply on Donini's status as Sheriff, or upon respondeat superior liability for his employees. Compton must come forward with evidence showing that

-17-

Donini was directly involved in the incidents of which he complains, or encouraged or directed other officers to act in a certain way.  He lacks any such evidence, and the Vestel Affidavit is insufficient to raise a **genuine** factual dispute regarding any individual liability of Donini.

<u>Liability of Scioto County</u>

Compton admits that the County cannot be vicariously liable for the deliberate indifference of its employees toward Compton's medical needs.  Compton alleges that the county has a policy or practice of ignoring detainees' medical needs, and that the facts regarding his own treatment are sufficient to raise a genuine dispute.  The Court disagrees.  The Court has concluded that Compton was not provided inadequate care, and that none of the jail officials were deliberately indifference to his medical needs.  The county cannot be held liable in the absence of a constitutional violation.  Moreover, Compton has no evidence of any policy of refusing to provide medical care, and he has not identified any other detainee at the jail who he alleges was denied medical care.  Compton also suggests that Scioto County has a policy of conditionally releasing pretrial detainees, in order to avoid incurring the cost to provide medical care at the jail.  Defendants correctly respond that, even if this is true, it does not amount to a constitutional violation nor exhibit a deliberate indifference to a detainee's medical needs.

-18-

State Law Claims

     Compton's third claim alleges that the Scioto County jail
facilities are inadequate, and are maintained in violation of
Ohio law.  He claims that the "defendants" are negligent and
deliberately indifferent to the safety and constitutional rights
of detainees, which constitutes willful and wanton misconduct
and/or reckless disregard for the safety of others.  (Doc. 1,
¶¶23-26)  Defendants contend that the state law claims should be
dismissed because Sheriff Donini and Scioto County are immune
under Ohio law.  Compton responds that the question of whether a
government employee acted with malice, bad faith, or in a wanton
or reckless manner, is a jury question, citing Fabrey v. McDonald
Village Police Dept., 70 Ohio St.3d 351 (Ohio 1994).

     Ohio Rev. Code 2744 generally shields Ohio counties from
civil liability based on the negligent acts of county employees.
In order to overcome that presumption, Compton must demonstrate
that an exception applies pursuant to O.R.C. 2744.02(B).  Those
exceptions include (1) negligent operation of a vehicle; (2)
negligent performance of the county's proprietary functions; (3)
negligent failure to maintain public roads; and (4) injuries
caused by a physical defect resulting from negligence in
maintaining buildings and grounds used to perform a governmental
function, but not including jails or other detention facilities.
None of these exceptions apply here, and Compton does not

-19-

identify any exception that could apply to pierce the immunity granted to Scioto County under this section.

Sheriff Donini is also entitled to immunity from any state law claim under Ohio Rev. Code 2744.03(A)(6)(b).  That statute provides immunity to a municipal employee unless Compton comes forward with evidence that the Sheriff's acts were manifestly outside the scope of his official responsibilities, or that he acted "with malicious purpose, in bad faith, or in a wanton or reckless manner."  While Compton argues in conclusory fashion that Sheriff Donini acted in bad faith when he told Vestel that "he would take care" of Compton's complaints, the facts set forth in Vestel's affidavit fall far short of raising a reasonable inference of malice or bad faith.  Ohio law requires a high level of willful misconduct before a municipal employee's statutory immunity may be overcome.  See, e.g., Jackson v. Butler County Board of Commissioners, 76 Ohio App.3d 448 (Ohio App. 1991), affirming immunity granted to county human service employees who had placed a minor child with her natural father, after she had been removed from her mother's home due to severe neglect.  The child was killed by the father a few weeks after the placement.  The appeals court noted that "malicious purpose, in bad faith, or in a wanton or reckless manner" encompassed a willful design to injure, or the intent to harm another, through unjustified conduct; and that bad faith is more than bad judgment; it imports

-20-

"dishonest purpose, moral obliquity, conscious wrongdoing..." and
"actual intent to mislead or deceive another."  "Reckless"
conduct is acting or intentionally failing to perform a duty
owed, with knowledge that the conduct creates an unreasonable
risk of physical harm to another.  Id. at 453-454 (internal
citations and quotations omitted).  The facts known to the county
workers about the father did not indicate any signs of violence,
and a claim that the social workers should have "done more" to
protect the child did not rise to the level of wanton or willful
intent to cause harm.  See also, Fabrey v. McDonald Village
Police Dep't., 70 Ohio St.3d 351 (Ohio 1994), noting that the
issue of wanton misconduct is normally a jury question, but that
the standard for demonstrating such misconduct is high.  The
court found that wanton misconduct was the failure to exercise
"any care whatsoever", and that "mere negligence is not converted
into wanton misconduct unless the evidence establishes a
disposition to perversity on the part of the tortfeasor."  Id. at
356 (internal citations and quotations omitted).  Compton lacks
any evidence suggesting that Sheriff Donini's conduct falls
within these standards of wanton and willful misconduct.
Defendants are entitled to judgment on Compton's state law
claims.

## CONCLUSION

For all of the foregoing reasons, the Court finds that

-21-

Compton has not established a genuine factual dispute with regard to any potential liability on the part of Sheriff Donini or Scioto County.  The Defendants' motion for summary judgment is therefore **GRANTED**, and Compton's complaint is dismissed with prejudice.

      SO ORDERED.

      THIS CASE IS CLOSED.s

DATED: August 31, 2011    <u>s/Sandra S. Beckwith</u>
                              Sandra S. Beckwith
                              Senior United States District Judge